390 F.Supp. 501 (1975)
Percy H. GREEN, Plaintiff,
v.
McDONNELL DOUGLAS CORPORATION, Defendant.
No. 68 C 187(1).
United States District Court, E. D. Missouri, E. D.
February 26, 1975.
Charles R. Oldham, St. Louis, Mo., for plaintiff.
Veryl L. Riddle, Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., E. E. O. C., amicus curiae, David R. Cashdan, Atty., Washington, D. C., for defendant.

MEMORANDUM
MEREDITH, Chief Judge.
This case was tried again to the Court, pursuant to remand from the United States Supreme Court, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The prior opinions in this case are reported at 463 F.2d 337 (8 Cir., 1972) and 318 F.Supp. 846 (1970).
The issues to be determined on remand are:
(1) was plaintiff denied reemployment because of his involvement in legitimate civil rights activities, or
(2) was plaintiff denied reemployment because of his race, or
(3) was plaintiff denied reemployment because of his participation in illegal activities which included a stall-in at the plant and a lock-in at an office building of defendant.
The plaintiff contends that No. 1 and No. 2 are the reasons he was not reemployed. Defendant contends that No. 3 is the reason the plaintiff was not reemployed.
The Supreme Court in its remand stated in substance: the plaintiff must be afforded a fair opportunity to show that defendant's stated reason for plaintiff's rejection was, in fact, pretext; that relevant to such a showing would be evidence that white employees involved *502 in acts against defendant of comparable seriousness to the stall-in were, nevertheless, retained or rehired; that defendant may justifiably refuse to rehire one who was engaged in unlawful disruptive acts against it, but only if this criterion is applied alike to members of all races. Other relevant evidence would be defendant's treatment of plaintiff during his prior term of employment and defendant's reaction to plaintiff's legitimate civil rights activities and defendant's general policy and practice with respect to minority employment.
Plaintiff was initially hired by defendant in 1956 and was laid off in August 1964. At the time of his lay-off, eight men, including the plaintiff, were laid off in his department, seven of them were white and Green was black. A review of the evidence presented in the original trial and that presented on this remand shows that Green when laid off, refused to take tests which would determine his eligibility for positions of higher classifications. Plaintiff further advised top company officials at the time of his lay-off that he would not take a reduction in status. He also stated that because he was black and actively engaged in civil rights, he should be given preferential treatment. He further stated that in the event he were laid off, he would cause trouble for McDonnell in the future.
Plaintiff's work record at the time of his lay-off as a mechanic, electric and radio, showed that he was an average employee. He was actively engaged in civil rights activities from early 1960 to the time of his lay-off. Defendant's management never reprimanded plaintiff, reduced his job status, or did anything which would interfere with his work because of his legitimate civil rights protests or because of his race. The record clearly shows that plaintiff's lay-off was not motivated in any way because of his race or because of his legitimate civil rights actions. The layoff of Green was a part of the general reduction in work force at defendant's plant which started in the spring of 1964.
After Green's lay-off, he continued his civil rights protests, including the October 1964 stall-in at the McDonnell plant in St. Louis County and the lock-in in July 1965 at the Roberts' building in the City of St. Louis, which are described in more detail in the Court's original opinion. The only change in the facts from the original opinion is that in the first trial Green testified that he was aware that the doors of the Roberts' building were to be chained and authorized the chaining by the members of Action. At the hearing on remand, Green denied that he knew the doors were to be locked and chained and was not aware of this until after he arrived on the scene and observed the doors had been chained. Defendant produced an eyewitness who testified that the person chaining the building doors was, in fact, Green himself. The demonstration at the Roberts' building was conducted by Action, and Action is controlled and directed by Percy Green, and has been since its inception.
Among Action's stated purposes of the stall-in and the lock-in was one to demand that McDonnell Aircraft Corporation immediately reinstate Percy Green with back pay.
When the plaintiff applied for reinstatement on July 26, 1965, as a mechanic, electric and radio, he was not reemployed because of his participation in the illegal activities, including the stall-in and the lock-in. On the same day that Green was rejected, seven persons were employed in the same category. Of the seven, one was black and six were white. The black received a higher starting salary than the six white persons. During 1965, of the trainees hired as mechanics, radio and electric, fifteen percent were black and the 1966 eighteen percent were black.
On November 8, 1965, June 13, 1967, and February 29, 1972, the plaintiff showed occasions when, as a result of *503 strike activities, the traffic on the roads to the McDonnell plant was slowed and a white man was arrested, no disciplinary action was taken against that particular employee. The defendant showed that on these occasions that blacks, as well as whites, took part in the activities and that agreements were reached with the union and the Federal Mediation Service that none of the employees involved in the walk-outs would be disciplined, with the exception of one man. In the June 1967 walk-out, the leader, Bruce McCarthy, who was white, was discharged. This matter was arbitrated and the discharge was upheld.
Plaintiff showed that in 1960 the St. Louis metropolitan area contained fourteen percent non-whites, whereas the McDonnell work force showed 5.4% non-whites in 1964; 6.4% non-whites in 1965; and 10.4% non-whites in 1966. The McDonnell work force is drawn from a much broader area than the St. Louis metropolitan area, and the percentage of non-whites decreases outside the St. Louis metropolitan census area. In 1965, 11% of all persons hired by McDonnell were non-white, and in 1966, 22% of those hired were non-white.
Plaintiff had incomplete figures taken from interrogatories showing that more non-whites were disciplined from 1946 through 1966 than the percentage of non-whites employed. However, these figures in the answers to interrogatories were stated to be incomplete, for the reason they were obtained in the year 1970 and that disciplinary figures are in the main destroyed after a three-year period of time so that there were no complete figures for the years 1964 through 1966. Additionally, McDonnell has a policy whereby a person who is disciplined and after three years receives no further discipline, may request that this be removed from his file and such is done. Accordingly, these figures are not persuasive.
There is nothing in this record to show that the conduct of the persons involved in any of the slow-downs concerning traffic by members of the union, on which occasions as many as 18,000 employees had walked out because there was no contract, was comparable to locking employees in a building.
Plaintiff was qualified for the job which he sought and, therefore, plaintiff made a prima facie case due to the fact that he was black and engaged in some civil rights activities in which he was legally entitled to engage.
The defendant in this case, however, has shown by a preponderance of the evidence that the reason for plaintiff not being reemployed was because of his participation in the illegal stall-in and lock-in and not because of his race or his legitimate civil rights activities. The defendant has shown that its stated reasons were not mere pretext, but the real reasons, and these reasons are adequate under the law for defendant not to rehire the plaintiff.